**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| SLYDE ANALYTICS LLC, | ) | Case No. |
| | ) | |
| Plaintiff, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| v. | ) | |
| | ) | |
| ZEPP HEALTH CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Slyde Analytics LLC ("Slyde" or "Plaintiff") for its Complaint against Defendant Zepp Health Corporation ("Zepp" or "Defendant') for patent infringement alleges as follows:

**THE PARTIES**

1.      Slyde is a limited liability company organized and existing under the laws of the State of Texas, with its principal place of business located at 104 East Houston Street, Suite 170, Marshall, TX 75670.

2.      Defendant Zepp is a corporation organized and existing under the laws of China, with its principal place of business at Huami Global Innovation Center, Building B2, Zhing'an Chuanggu Technology Park, No. 900 Wangjiang West Road, Hefei, 230088, People's Republic of China.  Zepp is a leading manufacturer and seller of smartwatches in the world and in the United States.   Upon information and belief, Zepp does business in Texas, directly or through intermediaries, and offers its products and/or services, including those accused herein of infringement, to customers and potential customers located in Texas, including in the Judicial District of the Eastern District of Texas.

**JURISDICTION**

3.     This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq.*  This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

4.     This Court has specific and personal jurisdiction over Defendant consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute.  Upon information and belief, Defendant has sufficient minimum contacts with the forum because Defendant transacts substantial business in the State of Texas and in this Judicial District.  Further, Defendant has, directly or through subsidiaries or intermediaries, committed and continues to commit acts of patent infringement in the State of Texas and in this Judicial District as alleged in this Complaint, alleged more particularly below.

5.     Venue is proper in this Judicial District as to Defendant pursuant to 28 U.S.C. § 1391 because, among other things, Defendant is not a resident in the United States, and thus may be sued in any judicial district pursuant to 28 U.S.C. § 1391(c)(3).  Defendant, through its own acts and/or through the acts of its subsidiaries or agents, makes, uses, sells, and/or offers to sell infringing products within this Judicial District, regularly does and solicits business in this Judicial District, and has the requisite minimum contacts with the Judicial District such that this venue is a fair and reasonable one.

**PATENTS-IN-SUIT**

6.     On November 19, 2013, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,588,033 (the "'033 Patent") entitled "Wristwatch with Electronic Display".     A   true   and   correct   copy   of   the   '033   Patent   is   available   at: http://pdfpiw.uspto.gov/.piw?Docid=8588033.

7.     On May 16, 2017, the United States Patent and Trademark Office duly and legally

issued U.S. Patent No. 9,651,922 (the "'922 Patent") entitled "Wristwatch with a Touch Screen and Method for Displaying on a Touch-Screen Watch".  A true and correct copy of the '922 Patent is available at: http://pdfpiw.uspto.gov/.piw?Docid=9651922.

8.    On October 31, 2017, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,804,678 (the "'678 Patent") entitled "Method and Circuit for Switching a Wristwatch from a First Power Mode to a Second Power Mode".  A true and correct copy of the '678 Patent is available at: http://pdfpiw.uspto.gov/.piw?Docid=9804678.

9.    On February 5, 2019, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 10,198,085 (the "'085 Patent") entitled "Method and Circuit for Switching a Wristwatch from a First Power Mode to a Second Power Mode".  A true and correct copy of the '085 Patent is available at: http://pdfpiw.uspto.gov/.piw?Docid=10198085.

10.    On April 26, 2016, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,320,457 (the "'457 Patent") entitled "Integrated Portable Deice and Method Implementing an Accelerometer for Analyzing Biomechanical Parameters of a Stride".  A true and correct copy of the '457 Patent is available at: http://pdfpiw.uspto.gov/.piw?Docid=9320457.

11.    On January 23, 2018, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,873,018 (the "'018 Patent") entitled "Integrated Portable Deice and Method Implementing an Accelerometer for Analyzing Biomechanical Parameters of a Stride".  A true and correct copy of the '018 Patent is available at: http://pdfpiw.uspto.gov/.piw?Docid=9873018.

12.    On January 3, 2017, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,536,134 (the "'134 Patent") entitled "Athlete Performance Monitoring

Device". A true and correct copy of the '134 Patent is available at: http://pdfpiw.uspto.gov/.piw?Docid=9536134.

13. Slyde is the sole and exclusive owner of all right, title, and interest in the '033 Patent, the '922 Patent, the '678 Patent, the '085 Patent, the '457 Patent, the '018 Patent, and the '134 Patent (collectively, the "Patents-in-Suit"), and holds the exclusive right to take all actions necessary to enforce its rights to the Patents-in-Suit, including the filing of this patent infringement lawsuit. Slyde also has the right to recover all damages for past, present, and future infringement of the Patents-in-Suit and to seek injunctive relief as appropriate under the law.

14. Slyde has at all times complied with the marking provisions of 35 U.S.C. § 287 with respect to the Patents-in-Suit. Upon information and belief, prior assignees and licensees have also complied with the marking provisions of 35 U.S.C. § 287.

## FACTUAL ALLEGATIONS

15. The Patents-in-Suit generally relate to methods and apparatuses related to wristwatches with a digital display.

16. The '033 Patent generally relates to technology involving a wristwatch with an electronic display that displays a simulation of the movement of a mechanical watch. The technology described in the '033 Patent was developed by famed watch designers Pascal Pozzo Di Borgo and Jorg Hysek. For example, the technology is implemented by infringing smartwatches with an electronic display allowing for the display of a simulated mechanical watch movement including, but not limited to, the Amazfit Falcon, Amazfit T-Rex Ultra, Amazfit GTR Pro Limited Edition, Amazfit Bip 3, Amazfit Band 7, Amazfit Bip 3 Pro, Amazfit GTS 4 Mini, Amazfit GTR 4, Amazfit GTS 4, Amazfit T-Rex 2, Amazfit GTR 3 Pro, Amazfit GTR 3, Amazfit GTS 3, Amazfit Verge Lite, Amazfit Bip S Lite, Zepp E Square, Zepp E Circle, Zepp Z, Amazfit T-Rex

Pro, Amazfit GR 2e, Amazfit GTS 2e, Amazfit Bip U Pro, Amazfit GTS 2 mini, Amazfit Bip U, Amazfit GTS 2, Amazfit GTR 2, Amazfit Band 5, Amazfit GTR 42mm, Amazfit GTR 47mm, Amazfit GTS, Amazfit T-Rex, and Amazfit Bip S, alone or in combination with certain fitness applications, among other products.

17.    The '922 Patent generally relates to technology involving a wristwatch with a digital matrix display, a sheet of touch-sensitive glass, and a processing circuit for interpreting signals from the touch-sensitive glass in order to make changes to what is displayed on the digital matrix display.  The technology described in the '922 Patent was developed by famed watch designers Pascal Pozzo Di Borgo and Jorg Hysek.  For example, the technology is implemented by infringing smartwatches with a digital display including, but not limited to, the Amazfit Falcon, Amazfit T-Rex Ultra, Amazfit GTR Pro Limited Edition, Amazfit Bip 3, Amazfit Band 7, Amazfit Bip 3 Pro, Amazfit GTS 4 Mini, Amazfit GTR 4, Amazfit GTS 4, Amazfit T-Rex 2, Amazfit GTR 3 Pro, Amazfit GTR 3, Amazfit GTS 3, Amazfit Verge Lite, Amazfit Bip S Lite, Zepp E Square, Zepp E Circle, Zepp Z, Amazfit T-Rex Pro, Amazfit GR 2e, Amazfit GTS 2e, Amazfit Bip U Pro, Amazfit GTS 2 mini, Amazfit Bip U, Amazfit GTS 2, Amazfit GTR 2, Amazfit Band 5, Amazfit GTR 42mm, Amazfit GTR 47mm, Amazfit GTS, Amazfit T-Rex, and Amazfit Bip S, alone or in combination with certain fitness applications, among other products.

18.    The '678 Patent and '085 Patent generally relate to technology involving a wristwatch with a display which can operate in a plurality of power modes, wherein the wristwatch switches from a first power mode to a second power mode upon the detection of a gesture or wristturn through the use of a sensor.  The technology described in the '678 Patent and '085 Patent was developed by Alex Bezinge, Adrian Mohni, Daniel Pfeifer, and Musa Dogan.  For example, the technology is implemented by infringing smartwatches with a digital display and associated

software, including, not limited to, the Amazfit Falcon, Amazfit T-Rex Ultra, Amazfit GTR Pro Limited Edition, Amazfit Bip 3, Amazfit Band 7, Amazfit Bip 3 Pro, Amazfit GTS 4 Mini, Amazfit GTR 4, Amazfit GTS 4, Amazfit T-Rex 2, Amazfit GTR 3 Pro, Amazfit GTR 3, Amazfit GTS 3, Amazfit Verge Lite, Amazfit Bip S Lite, Zepp E Square, Zepp E Circle, Zepp Z, Amazfit T-Rex Pro, Amazfit GR 2e, Amazfit GTS 2e, Amazfit Bip U Pro, Amazfit GTS 2 mini, Amazfit Bip U, Amazfit GTS 2, Amazfit GTR 2, Amazfit Band 5, Amazfit GTR 42mm, Amazfit GTR 47mm, Amazfit GTS, Amazfit T-Rex, and Amazfit Bip S, alone or in combination with certain fitness applications, among other products.

19.    The '457 Patent and '018 Patent generally relate to technology involving a a device for analyzing the biomechanical parameters of the stride of a runner.  The technology described in the '457 Patent and '018 Patent was developed by Patrick Flaction, Jacques Quievre, and Jean-Benoit Morin.  For example, the technology is implemented by infringing devices with a power source, accelerometer, chronograph, and digital processor for measuring parameters associated with a runner's stride, including, but not limited to, the Amazfit Falcon, Amazfit T-Rex Ultra, Amazfit GTR Pro Limited Edition, Amazfit Bip 3, Amazfit Band 7, Amazfit Bip 3 Pro, Amazfit GTS 4 Mini, Amazfit GTR 4, Amazfit GTS 4, Amazfit T-Rex 2, Amazfit GTR 3 Pro, Amazfit GTR 3, Amazfit GTS 3, Amazfit Verge Lite, Amazfit Bip S Lite, Zepp E Square, Zepp E Circle, Zepp Z, Amazfit T-Rex Pro, Amazfit GR 2e, Amazfit GTS 2e, Amazfit Bip U Pro, Amazfit GTS 2 mini, Amazfit Bip U, Amazfit GTS 2, Amazfit GTR 2, Amazfit Band 5, Amazfit GTR 42mm, Amazfit GTR 47mm, Amazfit GTS, Amazfit T-Rex, and Amazfit Bip S, alone or in combination with certain fitness applications, among other products.

20.    The '134 Patent generally relates to technology involving an athletic performance monitoring device with an accelerometer wirelessly connected to a user-worn device with a

processing system to provide athletic performance information. The technology described in the '134 Patent was developed by Patrick Flaction. For example, the technology is implemented by infringing smartwatches with a digital display including, but not limited to, the Amazfit Falcon, Amazfit T-Rex Ultra, Amazfit GTR Pro Limited Edition, Amazfit Bip 3, Amazfit Band 7, Amazfit Bip 3 Pro, Amazfit GTS 4 Mini, Amazfit GTR 4, Amazfit GTS 4, Amazfit T-Rex 2, Amazfit GTR 3 Pro, Amazfit GTR 3, Amazfit GTS 3, Amazfit Verge Lite, Amazfit Bip S Lite, Zepp E Square, Zepp E Circle, Zepp Z, Amazfit T-Rex Pro, Amazfit GR 2e, Amazfit GTS 2e, Amazfit Bip U Pro, Amazfit GTS 2 mini, Amazfit Bip U, Amazfit GTS 2, Amazfit GTR 2, Amazfit Band 5, Amazfit GTR 42mm, Amazfit GTR 47mm, Amazfit GTS, Amazfit T-Rex, and Amazfit Bip S, alone or in combination with certain fitness applications, among other products.

21.    Zepp has infringed and is continuing to infringe the Patents-in-Suit by making, using, selling, offering to sell, and/or importing, and by actively inducing others to make, use, sell, offer to sell, and/or importing, products including, but not limited, to smart watches with electronic displays and associated software.

## COUNT I
### (Infringement of the '678 Patent)

22.    Paragraphs 1 through 21 are incorporated by reference as if fully set forth herein.

23.    Slyde has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the '678 Patent.

24.    Defendant has and continues to directly infringe the '678 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '678 Patent. Such products include smartwatches with gesture detection for switching power modes, including, but not limited to, the Amazfit

Falcon, among other products.

25.    For example, Defendant has and continues to directly infringe at least claim 14 of the '678 Patent by making, using, offering to sell, selling, and/or importing into the United States products that include smartwatches with gesture detection for switching power modes, such as the Amazfit Falcon, among other products.

26.    For example, the Amazfit Falcon comprises a wristwatch which can be operated in a plurality of power modes including a first power mode and a second power mode.  The Amazfit Falcon comprises a display.[1]  The Amazfit Falcon comprises a microcontroller (*e.g.*, the watch's processor).  The Amazfit Falcon comprises a touch panel underneath a cover glass of the wristwatch for detecting a gesture on the cover glass.  The Amazfit Falcon comprises a touch controller for interpreting touch signal provided by the touch panel and for converting the signals into command signals.  The Amazfit Falcon comprises an inertial sensor comprising an accelerometer and a processor, said accelerometer being arranged for generating an acceleration signal and the processor being arranged for discriminating between gesture and no gesture based on a direction of the acceleration signal as measured by the accelerometer being a three dimensional accelerometer, and on a slope or frequency of the acceleration signal, while the microcontroller and the touch controller are in a sleep power mode.[2]  The Amazfit Falcon comprises a touch controller, wherein touch controller is commanded so as to be switched to the second power mode upon gesture detection by the inertial sensor and for detecting a tap gesture on the cover glass with the touch panel.  The Amazfit Falcon comprises a microcontroller, wherein

---

[1] See: https://us.amazfit.com/products/amazfit-falcon.  The Amazfit Falcon has a 1.28" AMOLED display.
[2] *Id.*  The Amazfit Falcon includes, among other movement sensors, an accelerometer.

the microcontroller is arranged for controlling a display of indication on the display and commanded to be switched to the second power mode upon a tap gesture detection by the touch controller and for discriminating between gesture and no gesture based at least on signals from the touch panel.

27.    For example, the Amazfit Falcon has power saving modes, wherein the user wearing the Amazfit Falcon can turn the screen from "off" to "on" by raising the wrist upon which the watch is worn.[3]

28.    Defendant has and continues to indirectly infringe one or more claims of the '678 Patent by knowingly and intentionally inducing others, including Zepp customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States products that include infringing technology, such as smartwatches with gesture detection for switching power modes.

29.    Defendant, with knowledge that these products, or the use thereof, infringe the '678 Patent at least as of the date of this Complaint, knowingly and intentionally induced, and continues to knowingly and intentionally induce, direct infringement of the '678 Patent by providing these products to end users for use in an infringing manner.

30.    Defendant has induced infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '678 Patent, but while remaining willfully blind to the infringement.

31.    Slyde has suffered damages as a result of Defendant's direct and indirect

---

[3] Upon information and belief, all Amazfit watches have a "raise-to-wake" type functionality, including the Amazfit Falcon.

infringement of the '678 Patent in an amount to be proven at trial.

32.     Slyde has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '678 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

## COUNT II
### (Infringement of the '085 Patent)

33.     Paragraphs 1 through 21 are incorporated by reference as if fully set forth herein.

34.     Slyde has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the '085 Patent.

35.     Defendant has and continues to directly infringe the '085 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '085 Patent.  Such products include smartwatches which detect orientation and switch power modes, including, but not limited to, the Amazfit Falcon, among other products.

36.     For example, Defendant has and continues to directly infringe at least claim 1 of the '085 Patent by making, using, offering to sell, selling, and/or importing into the United States products that include smartwatches which detect orientation and switch power modes, such as the Amazfit Falcon, among other products.

37.     For example, the Amazfit Falcon performs a method for switching a wristwatch from a first power moder to a second power mode.  The Amazfit Falcon performs the step of using an accelerometer for detecting a wristturn.[4]  The Amazfit Falcon performs the step of switching

---

[4] See:  https://us.amazfit.com/products/amazfit-falcon.  The Amazfit Falcon includes, among other movement sensors, an accelerometer.

the wristwatch from the first power mode to the second power mode when a wristturn has been detected.  The Amazfit Falcon performs the step of detecting a wristturn which comprises detecting that an orientation of the wristwatch is in a starting position, wherein the step of detecting that the orientation is in a starting position comprises detecting that the orientation of the wristwatch is held within a first range for a defined time.  The Amazfit Falcon performs the step of detecting that an orientation of the wristwatch is then in a final position, wherein the step of detecting that the orientation is in the final position comprises detecting that the orientation is in a second range different from the first range.  In response to a detection that the orientation of the wristwatch is in the second range, the Amazfit Falcon performs the step of detecting that the wristwatch remains substantially immobile during a predetermined duration and that a duration between the starting position and the final position is in a predefined range.

38.     For example, the Amazfit Falcon has power saving modes, wherein the user wearing the Amazfit Falcon can turn the screen from "off" to "on" by changing its orientation.

39.     Defendant has and continues to indirectly infringe one or more claims of the '085 Patent by knowingly and intentionally inducing others, including Zepp customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States products that include infringing technology, such as smartwatches which detect orientation and switch power modes.

40.     Defendant, with knowledge that these products, or the use thereof, infringe the '085 Patent at least as of the date of this Complaint, knowingly and intentionally induced, and continues to knowingly and intentionally induce, direct infringement of the '085 Patent by providing these products to end users for use in an infringing manner.

41.     Defendant has induced infringement by others, including end users, with the intent

to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '085 Patent, but while remaining willfully blind to the infringement.

42.    Slyde has suffered damages as a result of Defendant's direct and indirect infringement of the '085 Patent in an amount to be proven at trial.

43.    Slyde has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '085 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

## COUNT III
### (Infringement of the '033 Patent)

44.    Paragraphs 1 through 21 are incorporated by reference as if fully set forth herein.

45.    Slyde has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the '033 Patent.

46.    Defendant has and continues to directly infringe the '033 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '033 Patent.  Such products include smartwatches with an electronic display allowing for the display of simulated mechanical watch movement, including, but not limited to, the Amazfit Falcon, among other products.

47.    For example, Defendant has and continues to directly infringe at least claim 1 of the '033 Patent by making, using, offering to sell, selling, and/or importing into the United States products that include smartwatches with an electronic display allowing for the display of simulated mechanical watch movement, including, but not limited to, the Amazfit Falcon, among other products.

48.    For example. the Amazfit Falcon is a wristwatch comprising a watchcase, an electronic display in said watchcase,[5] and a quartz oscillator.  The Amazfit Falcon comprises a microcontroller being arranged for reproducing on the electronic display the simulation of a mechanical watch movement comprising a gear train, the simulation being visible so as to indicate the time, the microcontroller being further arranged for synchronizing the displayed time by the displayed mechanical movement with that of the quartz oscillator.

49.    For example, Defendant promotes the sale of digital watch faces for the Amazfit Falcon on its website and through the AmazFaces mobile app.  Through the use of a microcontroller on the Amazfit Falcon, the Amazfit Falcon reproduces on the electronic display a simulation of the mechanical movement, including a gear train.  The Amazfit Falcon comprises a microcontroller arranged to synchronize the displayed time by the displayed mechanical movement with that of the quartz oscillator.[6]

50.    Defendant has and continues to indirectly infringe one or more claims of the '033 Patent by knowingly and intentionally inducing others, including Zepp customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States products that include infringing technology, such as smartwatches with an electronic display allowing for the display of simulated mechanical watch movement.

51.    Defendant, with knowledge that these products, or the use thereof, infringe the '033 Patent at least as of the date of this Complaint, knowingly and intentionally induced, and continues to knowingly and intentionally induce, direct infringement of the '033 Patent by providing these

---

[5] See: https://us.amazfit.com/products/amazfit-falcon.  The Amazfit Falcon has a 1.28" AMOLED display.

[6] See: https://amazfitwatchfaces.com/falcon/view/32.

products to end users for use in an infringing manner.

52.    Defendant has induced infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '033 Patent, but while remaining willfully blind to the infringement.

53.    Slyde has suffered damages as a result of Defendant's direct and indirect infringement of the '033 Patent in an amount to be proven at trial.

54.    Slyde has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '033 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

## COUNT IV
### (Infringement of the '922 Patent)

55.    Paragraphs 1 through 21 are incorporated by reference as if fully set forth herein.

56.    Slyde has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the '922 Patent.

57.    Defendant has and continues to directly infringe the '922 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '922 Patent.  Such products include smartwatches with a digital display and touch-sensitive glass which allows for the selection of cards, including, but not limited to, the Amazfit Falcon, among other products.

58.    For example, Defendant has and continues to directly infringe at least claim 1 of the '922 Patent by making, using, offering to sell, selling, and/or importing into the United States products that include smartwatches with a digital display and touch-sensitive glass which allows

for the selection of cards, including, but not limited to, the Amazfit Falcon, among other products.

59.     For example, the Amazfit Falcon is a wristwatch comprising a digital matrix display.[7]  The Amazfit Falcon comprises a sheet of touch-sensitive glass.  The Amazfit Falcon comprises a processing circuit specifically laid out so as to interpret the signals from the touch-sensitive glass, for selecting a card from several available cards depending on these signals and for displaying said card on the entire digital matrix display.  The Amazfit Falcon comprises touch-sensitive glass, wherein said touch-sensitive glass is a two-dimensional glass for detecting a movement of at least one finger at any place on the touch-sensitive glass along at least two different directions.  The Amazfit Falcon comprises a processing circuit, wherein said processing circuit is specifically laid out so as to cause several available cards to scroll past in order to lastingly replace the initially displayed card with a replacement card selected between several available cards, wherein each card of the several available cards has a distinct fixed or periodically refreshed image. The size of the image corresponds to the size of said digital matrix display so that the displayed card occupies the whole of said digital matrix display.  One card of the several available cards occupying the entire digital matrix display is immediately and without further user intervention replaced after the scrolling by a different card of the several available cards that occupies the entire digital matrix display.  The Amazfit Falcon comprises a processing circuit, wherein the processing circuit is further laid out so that the replacement card is dependent from the initially displayed card and from the direction of the movement and is independent from the starting point and end point of the movement on the digital matrix display.

60.     For example, a user can change the face of the Amazfit Falcon by touching and

---

[7] See: https://us.amazfit.com/products/amazfit-falcon.  The Amazfit Falcon has a 1.28" AMOLED display.

holding the watches screen until it enters "Edit mode".  The user can then swipe left or right with their finger to select a new watch face, thus changing the watch's display.

61.     Defendant has and continues to indirectly infringe one or more claims of the '922 Patent by knowingly and intentionally inducing others, including Zepp customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States products that include infringing technology, such smartwatches with a digital display and touch-sensitive glass which allows for the selection of cards.

62.     Defendant, with knowledge that these products, or the use thereof, infringe the '922 Patent at least as of the date of this Complaint, knowingly and intentionally induced, and continues to knowingly and intentionally induce, direct infringement of the '922 Patent by providing these products to end users for use in an infringing manner.

63.     Defendant has induced infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '922 Patent, but while remaining willfully blind to the infringement.

64.     Slyde has suffered damages as a result of Defendant's direct and indirect infringement of the '922 Patent in an amount to be proven at trial.

65.     Slyde has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '922 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

### COUNT V
### (Infringement of the '457 Patent)

66.     Paragraphs 1 through 21 are incorporated by reference as if fully set forth herein.

67.     Slyde has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the '457 Patent.

68.     Defendant has and continues to directly infringe the '457 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '475 Patent.  Such products include devices and associated software for analyzing the biomechanical parameters of the stride of a runner, which include a power source, accelerometer, chronograph, belt, display, and digital processor to measure parameters associated with a runner's stride, including, but not limited to, the Amazfit T-Rex 2, among other products.

69.     For example, Defendant has and continues to directly infringe at least claim 1 of the '457 Patent by making, using, offering to sell, selling, and/or importing into the United States products that include devices and associated software for analyzing the biomechanical parameters of the stride of a runner, which include a power source, accelerometer, chronograph, belt, display, and digital processor to measure parameters associated with a runner's stride, including, but not limited to, the Amazfit T-Rex 2, among other products.

70.     For example, the Amazfit T-Rex 2 comprises a device designed for analyzing biomechanical parameters of a stride of a runner (*e.g.,* run tracking software).  The Amazfit T-Rex 2 comprises a self-sufficient electric power source.[8]  The Amazfit T-Rex 2 comprises a triaxial accelerometer capable of supplying at least one sequence of acceleration data in at least the vertical

---

[8] See: https://us.amazfit.com/products/amazfit-t-rex-2.  The Amazfit T-Rex 2 has a 500 mAh battery capacity.

direction whilst the runner travels a distance on a running course.[9] The Amazfit T-Rex 2 comprises a chronograph. The Amazfit T-Rex 2 comprises a belt (*e.g.*, wristband). The Amazfit T-Rex 2 comprises a display.[10] The Amazfit T-Rex 2 and associated software comprises a digital processor programmed for calculating, during or at the end of the run, biomechanical parameters of the stride of the runner on the basis of the acceleration data, of the distance and for the duration counted by the chronograph, and for displaying the parameters on the display, wherein the biomechanical parameters of the stride comprises the vertical oscillation of the center of gravity of the runner between a lowest position and a highest vertical position of the center of gravity of the runner, and includes the distance the center of gravity lowers and the distance the center of gravity elevates in a stride, and the sum of the lowering of the center of gravity of the runner from a first highest vertical position to a second lowest vertical position and of the elevation of the center of gravity of the runner from the second lowest vertical position to the first highest vertical position. The Amazfit T-Rex 2 and associated software calculate the biomechanical parameters at each stride, and the digital processor is programmed for calculating an average, per stride, of the calculated biomechanical parameters of the stride. Upon information and belief, the Amazfit T-Rex 2 and associated software obtain the lowering of the center of gravity as a function of maximum bearing force, of contact time and of the runner's mass, wherein the maximum bearing force is multiplied by the square of the contact time and divided by the runner's mass and wherein the function includes at least a constant.[11]

---

[9] *Id.* For example, the Amazfit T-Rex 2 allows users to "[i]mport a route file to the watch from the Zepp App and navigate [the user's] was along it in real time.

[10] See: https://us.amazfit.com/products/amazfit-t-rex-2. The Amazfit T-Rex 2 has a 1.39" AMOLED display.

[11] See: https://www.tomsguide.com/reviews/huami-amazfit-t-rex. "All of the Amazfit T-Rex's fitness sensors provide useful metrics, but you'll want to reference the Amazfit App (available for

71.     Defendant has and continues to indirectly infringe one or more claims of the '457 Patent by knowingly and intentionally inducing others, including Zepp customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States products that include infringing technology, such as devices and associated software for analyzing the biomechanical parameters of the stride of a runner, which include a power source, accelerometer, chronograph, belt, display, and digital processor to measure parameters associated with a runner's stride.

72.     Defendant, with knowledge that these products, or the use thereof, infringe the '457 Patent at least as of the date of this Complaint, knowingly and intentionally induced, and continues to knowingly and intentionally induce, direct infringement of the '457 Patent by providing these products to end users for use in an infringing manner.

73.     Defendant has induced infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '457 Patent, but while remaining willfully blind to the infringement.

74.     Slyde has suffered damages as a result of Defendant's direct and indirect infringement of the '457 Patent in an amount to be proven at trial.

75.     Slyde has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '457 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

**COUNT VI**

_____

Android and iOS) to get a full picture of your health.  It stores data on everything from your *stride length* and calories burned to your training loads and weight.  You can manually input your body measurement if you're looking to track fitness goals as well." (Emphasis added) Upon information and belief, the Amazfit T-Rex 2 has the same or equivalent functionality.

**(Infringement of the '018 Patent)**

76.     Paragraphs 1 through 21 are incorporated by reference as if fully set forth herein.

77.     Slyde has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the '018 Patent.

78.     Defendant has and continues to directly infringe the '018 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '018 Patent.  Such products include devices and associated software for analyzing the biomechanical parameters of a stride of a runner, which include a power source, accelerometer, GPS receiver, chronograph, and digital processor programmed to measure parameters associated with a runner's stride, including, but not limited to, the Amazfit T-Rex, among other products.

79.     For example, Defendant has and continues to directly infringe at least claim 1 of the '018 Patent by making, using, offering to sell, selling, and/or importing into the United States products that include devices and associated software for analyzing the biomechanical parameters of a stride of a runner, which include a power source, accelerometer, GPS receiver, chronograph, and digital processor programmed to measure parameters associated with a runner's stride, including, but not limited to, the Amazfit T-Rex 2, among other products.

80.     The Amazfit T-Rex 2 comprises a device designed for analyzing the biomechanical parameters of the stride of a runner.  The Amazfit T-Rex 2 comprises a self-sufficient electric power source.[12]  The Amazfit T-Rex 2 comprises a triaxial accelerometer capable of supplying at

---

[12] See: https://us.amazfit.com/products/amazfit-t-rex-2.  The Amazfit T-Rex 2 has a 500 mAh battery capacity.

least one sequence of acceleration data in at least the vertical direction whilst the runner travels a distance on a running course.[13]  The Amazfit Falcon comprises a GPS receiver.[14]  The Amazfit T-Rex 2 comprises a chronograph.  The Amazfit T-Rex 2 and associated software comprises a digital processor programmed for calculating, during or at the end of the run, biomechanical parameters of the stride of the runner, on the basis of said acceleration data, of a distance measured by the GPS receiver and the accelerometer, and of a duration counted by the chronograph[15], wherein the biomechanical parameters of the stride comprises a vertical oscillation of a center of gravity of the runner, and includes a distance the center of gravity lowers and a distance the center of gravity elevates in a stride, and a sum of the lowering and of the elevation of the center of gravity, and wherein the biomechanical parameters are calculated at each stride.  The Amazfit T-Rex 2 and associated software comprises a digital processor programmed for calculating biomechanical parameters of the stride of the runner, wherein said digital processor is programmed for determining an anteroposterior direction during the run of the runner.  The Amazfit T-Rex 2 and associated software comprises a digital processor programmed for calculating biomechanical parameters of the stride of the runner, wherein, upon information and belief, a sequence of acceleration data in the anteroposterior direction is measured by the accelerometer during the run and processed separately from the sequence of acceleration data in the vertical direction.  The Amazfit T-Rex 2 and associated software comprises a digital processor programmed for calculating biomechanical parameters of the stride of said runner, wherein, upon information and belief, the digital processor is programmed for calculating, during or at the end of the run, the

---

[13] *Id.*  The Amazfit T-Rex 2 includes, among other movement sensors, an accelerometer.

[14] *Id.*  The Amazfit T-Rex 2 includes "dual-band & 6 satellite positioning".

[15] See footnote 12.  Upon information and belief, the Amazfit T-Rex 2 has the same or equivalent functionality.

biomechanical parameters of the stride of said runner also on the basis of said acceleration data in said anteroposterior direction.  The Amazfit T-Rex 2 and associated software comprises a wireless interface for exchange of data with another data processing device (*e.g.*, a mobile phone with the Zepp Application downloaded.)

81.     Defendant has and continues to indirectly infringe one or more claims of the '018 Patent by knowingly and intentionally inducing others, including Zepp customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States products that include infringing technology, such devices and associated software for analyzing the biomechanical parameters of a stride of a runner, which include a power source, accelerometer, GPS receiver, chronograph, and digital processor programmed to measure parameters associated with a runner's stride.

82.     Defendant, with knowledge that these products, or the use thereof, infringe the '018 Patent at least as of the date of this Complaint, knowingly and intentionally induced, and continues to knowingly and intentionally induce, direct infringement of the '018 Patent by providing these products to end users for use in an infringing manner.

83.     Defendant has induced infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '018 Patent, but while remaining willfully blind to the infringement.

84.     Slyde has suffered damages as a result of Defendant's direct and indirect infringement of the '018 Patent in an amount to be proven at trial.

85.     Slyde has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '018 Patent, for which there is no adequate remedy at law, unless

Defendant's infringement is enjoined by this Court.

## COUNT VII
### (Infringement of the '134 Patent)

86.    Paragraphs 1 through 21 are incorporated by reference as if fully set forth herein.

87.    Slyde has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the '134 Patent.

88.    Defendant has and continues to directly infringe the '134 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '134 Patent.  Such products include athletic performance monitoring devices with an accelerometer wirelessly connected to a user-worn device with a processing system to provide athletic performance information, including, but not limited to, the Amazfit Falcon, among other products.

89.    For example, Defendant has and continues to directly infringe at least claim 1 of the '134 Patent by making, using, offering to sell, selling, and/or importing into the United States products that include performance monitoring devices with an accelerometer wirelessly connected to a user-worn device with a processing system to provide athletic performance information, including, but not limited to, the Amazfit Falcon, among other products.

90.    The Amazfit Falcon comprises an athletic performance monitoring device.  The Amazfit Falcon comprises an accelerometer adapted to be worn by an athlete close to the center of gravity of the athlete.[16]  The Amazfit Falcon comprises a user-worn device with a processing

---

[16] See: https://us.amazfit.com/products/amazfit-falcon.  The Amazfit Falcon includes, among other movement sensors, an accelerometer.

system integral thereto such that the processing system (*e.g.*, a mobile phone) can be worn by the athlete (*e.g.*, in an arm band, pouch, or pocket).  The Amazfit Falcon comprises an accelerometer wherein the accelerometer is further configured such that it can wirelessly communicate acceleration data, relating to the acceleration of the athlete, to the processing system, and wherein the processing system is configured such that, during use, it requests acceleration data from the accelerometer only when a predefined event has occurred, and such that it can process the acceleration data it receives from the accelerometer to provide athletic performance information.[17]

91.     Defendant has and continues to indirectly infringe one or more claims of the '134 Patent by knowingly and intentionally inducing others, including Zepp customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States products that include infringing technology, such as performance monitoring devices with an accelerometer wirelessly connected to a user-worn device with a processing system to provide athletic performance information and associated software.

92.     Defendant, with knowledge that these products, or the use thereof, infringe the '134 Patent at least as of the date of this Complaint, knowingly and intentionally induced, and continues to knowingly and intentionally induce, direct infringement of the '134 Patent by providing these products to end users for use in an infringing manner.

93.     Defendant has induced infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '134 Patent, but while remaining willfully

---

[17] *Id.*  For example, the Amazfit Falcon allows a user to "[s]et the watch to send reminders or automatically change stages based on your performance metrics."

blind to the infringement.

94.    Slyde has suffered damages as a result of Defendant's direct and indirect infringement of the '134 Patent in an amount to be proven at trial.

95.    Slyde has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '134 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Slyde prays for relief against Defendant as follows:

a.    Entry of judgment declaring that Defendant has directly and/or indirectly infringed one or more claims of each of the Patents-in-Suit;

b.    An order pursuant to 35 U.S.C. § 283 permanently enjoining Defendant, their officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them, from further acts of infringement of one or more of the Patents-in-Suit;

c.    An order awarding damages sufficient to compensate Slyde for Defendant's infringement of the Patents-in-Suit, but in no event less than a reasonable royalty, together with interest and costs;

d.    Entry of judgment declaring that this case is exceptional and awarding Slyde its costs and reasonable attorney fees under 35 U.S.C. § 285; and

e.    Such other and further relief as the Court deems just and proper.

Dated: April 14, 2023                              Respectfully submitted,

                                                   _/s/ Vincent J. Rubino, III_____
                                                   Alfred R. Fabricant

NY Bar No. 2219392
Email: ffabricant@fabricantllp.com
Peter Lambrianakos
NY Bar No. 2894392
Email: plambrianakos@fabricantllp.com
Vincent J. Rubino, III
NY Bar No. 4557435
Email: vrubino@fabricantllp.com
**FABRICANT LLP**
411 Theodore Fremd Avenue, Ste 206 South
Rye, New York 10580
Telephone: (212) 257-5797
Facsimile: (212) 257-5796

John Andrew Rubino
NY Bar No. 5020797
Email: jarubino@rubinoip.com
Michael Mondelli III
NY Bar No. 5805114
Email: mmondelli@rubinoip.com
**RUBINO IP**
51 J.F.K. Parkway
Short Hills, NJ 07078
Telephone: (973) 535-0920
Facsimile: (973) 535-0921

***ATTORNEYS FOR PLAINTIFF,
SLYDE ANALYTICS LLC***